(Superior Court of Cincinnati.)
Special Term.
THE CINCINNATI, COLUMBUS & WOOSTER TURNPIKE COMPANY v. THE COMMISSIONERS OF HAMILTON COUNTY.

---

(1.) A court of equity is not bound to grant an unconditional order of injunction when it can afford relief in some other manner.

(2.) Where the ultimate relief to plaintiff is compensation in the nature of damages, and equity can afford adequate relief by requiring defendant to give bond to pay such damages, an injunction will be denied.

(3.) Cases within the protection of article 1, section 19, of the constitution, which do not require as a condition precedent the payment or securement of compensation for property sought to be taken by the public, are subject to the rules laid down in syllabi 1 and 2.

---

DEMPSEY, J.

This is a petition for a perpetual injunction against the defendants to restrain them from entering upon the plaintiff's right of way and interfering with the surface and present grade of plaintiff's turnpike road and damaging a certain toll-house on the margin of said road, until full and proper compensation be made for the property and interests sought to be taken or damaged as provided for in the constitution of Ohio. A temporary order was granted, and the cause comes on now for hearing on a motion to dissolve such order, the disposition of such motion being practically a disposition of the whole case. It appears from the statements and arguments of counsel on the motion, as also from averments in the petition (defendants having as yet filed no answer, and no testimony or oral evidence having been introduced), that the defendants have for some time past been engaged in the construction of a free public bridge across the Little Miami river, near Indian Hill, in this county, one of the outlets of which bridge will terminate at or abut the line of the turnpike road operated and owned by plaintiff; that in order to secure a free and ready access to said bridge, it is necessary that approaches thereto be built, which approaches will require encroachment by the defendants upon plaintiff's right of way, together with a disturbance and uplifting of the grade of the turnpike at that point, together with other changes and slopings of the turnpike on either side of the points of said approaches so as to render the turnpike, after the approaches are finished, capable of use in connection with said approaches.

It appears that on the side of the turnpike furthest from the end of the bridge and about opposite thereto, is a toll-house owned by the plaintiff, and used and occupied by its toll gatherer. It also appears that the defendants have about completed the main body of the bridge structure, and that it would now be ready for use by the public if the approaches thereto were completed. The defendants have not instituted any proceedings for the purpose of appropriating for the public use any of the turnpike company's rights or easements in the turnpike right of way, but have entered upon the same, and are excavating portions of it for foundations for the approaches, and are to fill up other portions of it opposite the bridge so as to make the grade necessary for free and easy access to the bridge proper; that they have already heaped masses of dirt and stone upon said right of way, and intend to continue the same until at this point the grade of the turnpike will be changed about six feet, and said toll-house will be either buried or left so low below the new level that it will be practically destroyed; that the acts of the defendants will result in the turnpike road becoming foundrous, its capacity for affording easy transit will be lessened and its tolls diminished. The defendants admit all this, but say that their acts are but acts involving a change of grade; that their trespasses are permanent trespasses, and that plaintiff has a full, complete and adequate remedy at law therefor. At the argument plaintiff's counsel planted his demand for relief squarely on the guaranties contained in article 1, section 19, of the constitution of 1851, as to the inviolability of private property rights. No authorities were cited on the argument and no briefs furnished by either counsel, so that practically I have had to dig the law out for myself, and the conclusions I have arrived at are the result of my own investigations. I do not deem it necessary to the purposes of this decision to determine whether the acts of the defendants constitute a "taking" of private

property within the meaning of the term as used in the constitution, or are only mere trespasses not involving any element of a taking for which compensation is first to be provided. I concede to plaintiff that they do constitute a taking. It is undoubtedly the general rule that where private property is sought to be taken or used for public purposes without compensation being provided therefor, an injunction may lie at the suit of the owner of the property so sought to be taken or used, to restrain the same until compensation be made or provided for. The rule has its foundation in the constitutional guaranties, and without reference to the comparative rights, convenience or injury to the respective parties; the organic law prescribes certain restrictions upon the right of the public, or of quasi-public corporations, to seize the property of private individuals, and it is holden to be the duty of the courts to see that public officials and the managers of public corporations faithfully comply with such restrictions before making appropriations. Lewis on Eminent Domain, section 632.

But equity is never inflexible in the application of general rules, even with regard to constitutional provisions, if practical justice can be done by modifying the rule, and the rights of the public and the private individual can both be substantially protected. Justice Brewer of the United States Supreme Court, when circuit judge of the eighth United States circuit, gave this question careful consideration in the case of McElroy v. Kansas City, reported in 21 Fed. Rep. at p. 257, which case was an application for an injunction and involved the same constitutional rights as are relied upon in the case at bar. At page 261, this learned judge lays down three propositions which ought to control in the decision of cases of this nature:

"1st. A chancellor, in determining an application for an injunction, must regard not only the rights of the complainant which are sought to be protected, but the injuries which may result to the defendant or to others from the granting of the injunction. * * * * This rule has been enforced in a multitude of cases and under a variety of circumstance, and is one of such evident justice as needs no citation of authorities for its support.

"2d. When the defendant has an ultimate right to do the act sought to be restrained; but only upon some conditions precedent, and compliance with the condition is within the power of the defendant, injunction will almost universally be granted until the condition is complied with. This principle lies at the foundation of the multitude of cases which have restrained the taking of property until after the payment of compensation. * * * * In those cases the courts have seldom stopped to inquire whether the value of the property sought to be taken was little or great; whether the injury to complainant was large or small, but have contented themselves with holding that as the defendant had full means for ascertaining such compensation, it was his first duty to use such means, determine and pay the compensation, and until he did so the taking of the property would be enjoined.

"3d. Where the defendant has an ultimate right to do the act sought to be enjoined upon certain conditions, and the means of complying with such conditions are not at his command, the courts will endeavor to adjust their orders so on the one hand as to give to the complainant the substantial benefit of such conditions, while not restraining the defendant from the exercise of his ultimate rights."

And in the case before him the judge says: "This defendant has the ultimate right to grade this street. As a condition of such right is a payment of damages, but it has no means of ascertaining those damages; no tribunal has been created, no provision of law made, for their ascertainment. Hence, if possible, the court should provide for securing to the defendant this ultimate right, and at the same time give to the complainant the substantial benefit of the prior conditions." And in that case the plaintiff was given a restraining order, but was required to enter into a bond for $3,000 and a stipulation to accept in full satisfaction of all claims against the city such damages as would be ascertained by three commissioners of freeholders, to be appointed by the court, after the manner provided by the Missouri constitution, and leave was given to defendant, at any time, upon twenty days' notice to plaintiff, to apply for such commissioners; and upon the payment of the damages ascertained by them the injunction was to be vacated. At first blush it would seem that the case at bar fell within the terms of Justice Brewer's second proposition, and that injunction should issue against defendants. Under section 879, Revised Statutes, as amended April 26, 1898, (vol. 93, p. 407, O. L.), the defendants herein have the ultimate right to enter upon and appropriate as much of plaintiff's right of way and other property as may be necessary for the approaches to this bridge. And by an act of the general assembly, passed April 27, 1896 (vol. 92, p. 650, O. L.), provision is made for the payment of the expenses of these approaches, so that it would seem there was nothing standing in the way of defendants providing for and paying plaintiff's damages and compensation for property taken in advance of the taking and damages, if provision and payment in advance was a requisite.

Section 19, article 1, of the constitution of 1851 provides that when private property is "taken * * * * for the purpose of making or repairing roads, which shall be open to the public without charge, a compensation shall be made to the owner in money, and in all other cases, where private property is taken for public use compensation therefor shall first be made in money,

or first secured by a deposit of money". Now, I take it that the term "road" as used in this section means "highway," and that the approaches to this bridge whether taken in connection with the bridge, which is itself a free public highway, or considered by themselves alone, are highways, and hence roads.

Assuming this to be so, our supreme court, in Toledo v. Preston, 50 Ohio St., 361, has held that article 1, section 19, of the constitution, does not require compensation in advance to be made or secured when private property is taken for free roads or streets, and that an inquiry of damages resulting from the making of such a public improvement may be constitutionally postponed until after the improvement is completed. Hence, it was not a condition precedent to the taking of plaintiff's property and right of way that compensation or damages should be first ascertained and paid or secured to plaintiff; the want of this element takes plaintiff's case out of Justice Brewer's second proposition, and, hence, plaintiff would not, as a matter of course, be entitled to an injunction on that ground; nor does plaintiff's case fall within the terms of the third proposition laid down by Justice Brewer, for defendants have at hand, by virtue of the two acts of the legislature hereinbefore referred to, the means of complying with the conditions necessary to get hold of plaintiff's property. Hence, to determine whether plaintiff ought in equity to have an injunction allowed, we are relegated to the principles enunciated in the first proposition. A chancellor in determining whether an injunction shall issue or not on terms, is not limited to imposing terms upon the plaintiff alone, and making the granting of the order dependent upon the complainant's compliance with the terms imposed. As is said in Justice Brewers' first proposition, not only rights of complainant are to be protected, but also injuries which may result to the defendant or to others; for instance, the public at large, are to be regarded. This proposition came under consideration in the case of Kansas & A. V. Ry. Co. v. Payne, 49 Fed. Rep., 114, a case involving a right of way, and with facts generally similar to the case at bar; and Judge Thayer, in extending the principles underlying the first proposition of Justice Brewer, decided that a court of equity is not "bound to grant an unconditional order of injunction when it can afford adequate relief in some other way;" and recognizing in the case also the rule laid down in the 50 Ohio St., 361, as to the non-necessity of payment of compensation prior to the taking of private property for public roads and highways, that learned Judge proceeded to say that where a bond will secure to the plaintiff all rights and compensation and damages that would have been secured to him in a prior proceeding to appropriate and fix compensation, and where the injunction would impede a large public improvement involving the needs and convenience of the public at large, which would be greatly interfered with, the injunction would be refused upon defendant giving a sufficient bond to secure the plaintiff in his just rights and claims. It seems to me the principles enunciated in these two cases furnish to the court the safest and most just guides in disposing of the case at bar.

It appears from the statements of counsel that the bridge now completed will be absolutely useless to the public unless means of egress and ingress to it be provided; that these means must be provided immediately, and unless so provided, the winter months will arrive when work of the nature required for these approaches must be deferred until next spring; that this bridge is an outlet to Cincinnati for practically the whole east end of the county; that as a practical matter the right of way of plaintiff is not appropriated exclusively by the county; that changes in the grade of the right of way will of course be made, but that any damages arising therefrom, as well as all damages from loss of toll, destruction of the toll-house, diminution of future traffic, etc., can all be more accurately and exactly measured after the completion of the approaches and the alteration of the right of way than they can be now; that the diminution of the traffic, if any, over the turnpike, will be but temporary and while the construction of the approaches is in progress, while a stoppage of the construction now would in effect be a stoppage of the completion of the bridge until next spring, and entail far greater inconvenience upon a great number of people; and finally, that the bridge and the approaches when completed will be a financial benefit instead of a detriment to plaintiff, inasmuch as it will end to throw upon the turnpike road a great amount of traffic that now seeks a public highway on the other side of the Miami river. Balancing the equities, rights, and conveniences due to the respective parties herein and to the public, it is my opinion that all of plaintiff's rights to compensation and damages can be effectively secured to it by a bond from defendants, conditioned on the dissolution of the temporary order herein and the prompt and speedy execution of the work now in progress, for the payment of such damages and compensation as may be assessed to plaintiff, because of the infringement of its rights herein, by a jury as provided in the constitution, unless the parties agreed upon some other method of assessment. This bond will be in the sum of $10,000, and on the execution thereof by defendants with sufficient sureties satisfactory to the court, the temporary order heretofore issued will be dissolved. The cause, however, will be retained by the court for such future orders as the exigencies of the case may demand.

George Hoadly, Jr., for plaintiff.

Jas. R. Foraker, contra.